**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **WESTINGHOUSE ELECTRIC** | ) | |
| **COMPANY LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 22-cv-3228 (APM)** |
| **KOREA ELECTRIC POWER CORP.** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Westinghouse Electric Company LLC and Defendants Korea Electric Power Corporation ("KEPCO") and Korea Hydro & Nuclear Power Co. Ltd. ("KHNP") (collectively, "Defendants") are parties to an agreement by which Westinghouse licenses certain nuclear power plant designs to Defendants. Defendants used Westinghouse's technology to develop their own nuclear reactor designs. Westinghouse fears Defendants are about to transfer that design information to various third countries without satisfying either reporting or approval requirements under Part 810 of Title 10, Code of Federal Regulations, which implements provisions of the Atomic Energy Act. Westinghouse maintains that it has responsibility under Part 810 to ensure that any retransfer of its licensed technology complies with the regulations.

Westinghouse brought this action to obtain a declaration that Defendants' delivery of Westinghouse's licensed technology outside the Republic of Korea is subject to the obligations of Part 810. Defendants have moved to dismiss or, alternatively, to compel arbitration. Defendants' motion to dismiss is granted. The court holds that Westinghouse lacks a private cause of action to enforce Part 810 and therefore has failed to state a claim under the Declaratory Judgment Act.

**I.**

**A.**

Part 810 sets forth regulations governing the transfer of technology for development, production, or use of nuclear reactors, equipment and materials. 10 C.F.R. § 810.2(a) and (b). As relevant here, Part 810 applies to "[t]he transfer of technology that involves" certain enumerated commercial activities "either in the United States or abroad by [persons subject to the jurisdiction of the United States] or by licensees, contractors or subsidiaries under their direction, supervision, responsibility, or control." *Id.* § 810.2(a)(2).

Plaintiff Westinghouse is a U.S. company that designs, develops, supplies, and tests commercial nuclear power plant facilities in the United States and abroad. Compl., ECF No. 1, ¶ 23. Westinghouse's predecessor-in-interest, CE, developed the CE System 80 and System 80+ nuclear power plant designs. *Id.* ¶ 30. In 1997, CE licensed to Defendants "certain intellectual property and other technical information relating to CE's pressurized water reactor technology and System 80+ nuclear power plant design," which the court refers to as the "Licensed Technology." *Id.* ¶¶ 31–33 (the "1997 License Agreement"). The Licensed Technology is subject to Part 810. *Id.* ¶ 34. Westinghouse acquired CE in 2000 and thus assumed the role of licensor under the 1997 License Agreement. *Id.* ¶ 32.

Defendants developed their own nuclear power plant designs using a pressurized water reactor design known as the Advance Power Reactor 1400 ("APR1400"). *Id.* ¶ 2. According to Westinghouse, Defendants in the past have acknowledged that the APR1400 design is based on the Licensed Technology and that compliance with Part 810 is required to deliver APR1400 technical information outside the Republic of Korea. For instance, in 2010, Westinghouse and Defendants entered into a ten-year Business Cooperation Agreement. *Id.* ¶ 41. Pursuant to that

contract, the parties agreed that (1) Westinghouse would submit to the U.S. Department of Energy ("DOE") an application for specific authorization under Part 810 "to authorize transfer of the Westinghouse technology" to another country outside of the Republic of Korea, and (2) "Defendants would cooperate with Westinghouse by providing Westinghouse all information requested by Westinghouse that would be necessary for Westinghouse to pursue the application for specific authorization under Part 810." *Id.* ¶ 42. Then, in 2012, Defendants won a contract to supply APR1400 reactors to the United Arab Emirates ("UAE"), and Westinghouse "received specific authorization under Part 810 to permit Defendants to retransfer [the] Licensed Technology to the UAE in compliance with Part 810." *Id.* ¶¶ 46–47.

At some point, Westinghouse learned that Defendants were about to enter into a memorandum of understanding to deliver APR1400 technical information to the government of Poland. *Id.* ¶¶ 2, 50. It also learned that Defendants were invited to bid on contracts to supply nuclear power plants to the Kingdom of Saudi Arabia and the Czech Republic. *Id.* ¶ 3. Westinghouse maintains that such deliveries would fall under Part 810 and trigger certain reporting or approval requirements for which Westinghouse is responsible. *Id.* ¶¶ 52–54. Defendants, however, "have refused to provide assurances that they will comply with Part 810 . . . , including the delivery of APR1400 technical information" to Poland, Saudi Arabia, and the Czech Republic. *Id.* ¶ 57. DOE has advised Westinghouse that it "would be in violation of Part 810 if Defendants' contemplated retransfer transactions [to Poland] involving the APR1400 are covered by Part 810." *Id.* ¶ 55.

## B.

On October 21, 2022, Westinghouse commenced this action, asserting a single count under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. *Id.* at 13–14. Westinghouse "seeks a

declaration that Defendants' delivery of technical information regarding Korean Reactor Designs outside the Republic of Korea," including to Poland, the Kingdom of Saudi Arabia, and the Czech Republic, "is subject to the obligations of Part 810." *Id.* ¶ 69. They also ask to enjoin Defendants from delivering the technical information to these countries. *Id.* at 15.

Defendants have moved to dismiss and to compel arbitration. Defs.' Rule 12(b)(1) and Rule 12(b)(6) Mot. to Dismiss and to Compel Arbitration, ECF No. 16 [hereinafter Defs.' Mot. to Dismiss]. They contend that, "[t]o the extent that Westinghouse seeks relief directly under the Atomic Energy Act's Part 810 regulations [], it lacks a private right of action to sue Defendants to compel compliance with those regulations." *Id.* at 1. Alternatively, if Westinghouse "seeks to enforce its 1997 License Agreement with Defendants, that agreement requires that the claims at issue here be submitted to binding arbitration before the Korean Commercial Arbitration Board." *Id.* at 2.

In its opposition, Westinghouse disclaims that it seeks to enforce a contractual right. Westinghouse states that its "request for a declaration . . . exists separate and apart from the parties' 1997 license agreement or disputes under that license agreement." Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 20 [hereinafter Pl.'s Opp'n], at 6. It "is not asking this Court to determine whether Defendants are obligated under the parties' 1997 license agreement to comply with Part 810." *Id.* Instead, it contends that "there is a ripe and justiciable dispute between the parties over the regulatory and legal rights and obligations imposed by Part 810 that is amenable to a declaration by this Court under the Declaratory Judgment Act." *Id.* at 2. The court accepts Westinghouse's characterization of its own claim.

The court therefore does not consider Defendants' request to compel arbitration. That relief is sought only "[t]o the extent that Westinghouse seeks to enforce its 1997 License

4

Agreement." Defs.' Mot. to Dismiss at 2. Because Westinghouse has not requested a declaration as to that contract, the only question for the court to resolve is whether Plaintiff has stated a claim under the DJA. *See id.* at 1–2.

## II.

### A.

Westinghouse seeks a "ruling as to the scope of Defendants' regulatory/legal obligations under Part 810." Pl.'s Opp'n at 7. Such a ruling, however, would presuppose that Westinghouse has a private right of action under Part 810. This court finds no such right.

The DJA does not provide an independent basis for federal jurisdiction. *See Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). Nor does it provide a cause of action. *Id.* Rather, the statute is "procedural only" and merely "enlarge[s] the range of remedies available in the federal courts." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (internal quotation marks omitted). The availability of declaratory relief "presupposes the existence of a judicially remediable right." *C & E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). Courts in this Circuit have understood a "judicially remediable right" to require the plaintiff to assert some underlying cognizable claim that arises under the Constitution or federal law. *See, e.g., Rudometkin v. Austin,* No. 21-cv-2220 (TSC), 2023 WL 5289288, at *1 n.1 (D.D.C. Aug. 17, 2023) (observing that the DJA "creates a remedy wholly dependent on 'the existence of a judicially remediable right' secured by federal law or the Constitution") (quoting *Ali*, 649 F.3d at 778); *Citizens for Resp. & Ethics in Washington v. Trump*, 302 F. Supp. 3d 127, 135 (D.D.C. 2018) (stating that "the Declaratory Judgment Act standing alone [cannot] supply a cause of action"); *Bellinger v. Bowser*, 288 F. Supp. 3d 71, 79 (D.D.C. 2017) (observing that the DJA does not

"obviate[] the need to demonstrate that the statute contains a private right of action"); *Detroit Int'l Bridge Co. v. Gov't of Canada*, 133 F. Supp. 3d 70, 88 (D.D.C. 2015) (determining whether a federal statute created a private right of action to sustain relief under the DJA).

Still, Westinghouse says that "a private right of action under the [Atomic Energy Act] is not required" to secure relief under the DJA. Pl.'s Opp'n at 18. It relies on *Committee on Judiciary, U.S. House of Representatives v. Miers*, in which the court held that "the [plaintiff] need not identify a cause of action apart from the DJA" to sustain its DJA claim. 558 F. Supp. 2d 53, 83–84 (D.D.C. 2008); Pl.'s Opp'n at 18. But *Miers* is inapposite. That case involved an effort by a House Committee to enforce a subpoena issued to a former White House counsel. The court went on to say immediately after the quoted portion upon which Westinghouse relies that "the [plaintiff] still must identify a judicially remediable right that may be enforced through the DJA." *Id.* at 84. That right, the court held, could be found in Article I of the Constitution, which "provides Congress with an implied right to issue subpoenas and enforce them judicially." *Id.*; *see also id.* ("The Court can identify no reason why that right cannot be vindicated by recourse to the federal courts through the DJA."). *Miers* therefore did not hold, as Westinghouse suggests, that a plaintiff can pursue a remedy under the DJA so long as there exists an "actual case or controversy." A plaintiff must identify a cause of action permitted by federal law.

**B.**

Recognizing that it might require a private right of action, Westinghouse asserts that one can be found in the Atomic Energy Act ("AEA"). Pl.'s Opp'n at 24–30. Westinghouse concedes that "[t]he AEA does not provide an express private right of action to enforce its provisions." *Id.* at 24. It nevertheless insists, relying on *Cort v. Ash*, 422 U.S. 66 (1975), and a lone out-of-Circuit district court case from 1978, *Drake v. Detroit Edison Co.*, 443 F. Supp. 833 (W.D. Mich. 1978),

that it "has an implied private right of action under the AEA at least to seek an interpretation of Part 810." *Id.* The court cannot agree.

The court in *Drake* concluded that the AEA provided an implied private right of action based on the *Cort v. Ash* framework. 443 F. Supp. at 838. Under *Cort*, the following four factors are considered to determine whether a statute provides a private right of action:

> First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' . . . , that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort*, 422 U.S. at 78. Applying these factors, the *Drake* court found a private right of action under the AEA. *Drake*, 443 F. Supp. at 837–40.

The D.C. Circuit has said that "since *Cort v. Ash*, the Supreme Court has been very hostile to implied causes of action." *Johnson v. Interstate Mgt. Co.*, 849 F.3d 1093, 1097 (D.C. Cir. 2017) (citing cases). The reason for this hostility "is evident: To recognize an implied cause of action, [courts] have to conclude that Congress *intended* to provide a cause of action even though Congress did not expressly say as much in the text of the statute . . . . [T]hat is a high bar to clear." *Id.* at 1097–98.

The court declines to find an implied cause of action in the AEA. As in *Johnson*, the text of the AEA "specifically addresses who may sue": the Attorney General. *Id.* at 1098. Section 2280 of Title 42 provides:

> Whenever in the judgment of the Commission any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of this

> chapter . . . the Attorney General on behalf of the United States may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and . . . a permanent or temporary injunction, restraining order, or other order may be granted.

42 U.S.C. § 2280. The Act further provides that "[n]o action shall be brought against any individual or person for any violation under this chapter unless and until the Attorney General of the United States has advised the Commission with respect to such action and no such action shall be commenced except by the Attorney General of the United States." 42 U.S.C. § 2271(c). Based on this text, courts uniformly have determined that the AEA does not create a private right of action. *See Liesen v. La. Power & Light Co.*, 636 F.2d 94, 95 (5th Cir. 1981) (holding that the AEA precludes private rights of action); *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 237–39 (3d Cir. 1980) (same); *Barrientos v. UT-Battelle, LLC*, 284 F. Supp. 2d 908, 915 (S.D. Ohio 2003) (stating that "the Atomic Energy Act [] does not create a private cause of action"); *Graham v. Niagara Mohawk Power Corp.*, 852 F. Supp. 150, 151 (N.D.N.Y. 1994) ("This court is persuaded by the prevailing authority and finds that the Atomic Energy Act does not provide a private party with a cause of action.") (citing cases).

Westinghouse attempts to avoid this clear delegation of the power to sue under the AEA. It claims that, because its suit "is not an action for a *violation* of the AEA or Part 810," the statute does not "indicate that Congress intended to deny Westinghouse a right of action here." Pl.'s Opp'n at 28. The AEA, however, vests in the Attorney General the power to seek to enjoin both actual *and* imminent violations of the Act or its implementing regulations. *See* 42 U.S.C. § 2280 (authorizing the Attorney General to seek an order enjoining "any acts or practices which constitute *or will constitute* a violation of any provision of this chapter, or any regulation . . . ," or "an order enforcing compliance with such provision") (emphasis added). "The express provision of one

8

method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001). The language of the AEA is thus clear that Congress did not provide a private right of action under the Act.

Westinghouse also maintains that recognizing an implied cause of action also is "consistent with the statute's purpose." Pl.'s Opp'n at 28. It contends that the availability of the relief it seeks "would deter the disclosure of U.S. nuclear technology for non-peaceful purposes by permitting a private party to obtain an enforceable order against a non-U.S. person or entity to restrain disclosure of highly sensitive information without compliance with Part 810," as well as "encourage research and development of nuclear technology and cooperation among U.S. and non-U.S. companies." *Id.* But these are "policy arguments are best addressed to Congress, not the courts." *Johnson*, 849 F.3d at 1098. Where, as here, there is no evidence that Congress intended to grant a private cause of action, an appeal to policy cannot sustain one. *See Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) ("It is logical, then, to assume that Congress will be explicit if it intends to create a private cause of action.").

In sum, because Westinghouse lacks a "judicially remediable right," it has failed to state a claim. Its Complaint therefore will be dismissed.

### III.

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 16, is granted. A final, appealable order accompanies this Memorandum Opinion.

Dated: September 18, 2023

Amit P. Mehta
United States District Court Judge

9